[No. C056661. Third Dist. Apr. 22, 2008.]

SOUTH SAN JOAQUIN IRRIGATION DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
SAN JOAQUIN COUNTY LOCAL AGENCY FORMATION
COMMISSION, Real Party In Interest,
PACIFIC GAS AND ELECTRIC COMPANY, Intervener.

COUNSEL

Davis Wright Tremaine, Martin L. Fineman, Edward W. O'Neill, Salle E. Yoo and Rochelle L. Wilcox for Petitioner.

No appearance for Respondent.

Neumiller & Beardslee, Michael F. McGrew and Daniel J. Schroeder for Real Party in Interest.

Manatt, Phelps & Phillips, Michael M. Berger, George M. Soneff and Benjamin G. Shatz for Intervener.

OPINION

MORRISON, J.—South San Joaquin Irrigation District (the District) planned to increase the services it offered by adding retail electric service. It unsuccessfully sought approval for the plan from the San Joaquin County Local Agency Formation Commission (SJ LAFCO). The District now contends approval from SJ LAFCO is unnecessary because SJ LAFCO has no power to authorize new service by a special district in its existing territory. It further contends SJ LAFCO approval is not required because, since the District already provided wholesale electric service, retail electric service is not a new or different service.

The District petitions for a writ of mandate or prohibition to vacate the trial court's order denying the District's motion for summary adjudication and granting the motion of defendant SJ LAFCO and intervener Pacific Gas and Electric Company (PG&E) for a judgment on the pleadings. We deny the petition. Recent amendments to the Government Code set forth procedures for local agency formation commission (LAFCO) approval for a special

district to provide a new or different service or class of service. The language, as well as the legislative history, of these amendments indicates LAFCO approval is required. Further, retail electric service is a different class of service than wholesale electric service.

## BACKGROUND

The District is a special district that provides irrigation water service and wholesale electric generation and electricity marketing services. In 2005, the District developed a plan to provide retail electric service within its existing service territory. The plan included the acquisition of PG&E's existing distribution facilities either through negotiated purchase or eminent domain. PG&E opposed the plan.

The District submitted a justification for proposal (the Application) to SJ LAFCO for approval to proceed with its plan to provide retail electric service. The Application stated the District was seeking approval from SJ LAFCO "to provide a new service pursuant to Article 1.5 of the Government Code (section 56824.10 et seq.)." SJ LAFCO certified the plan as complete.

After a hearing, SJ LAFCO denied the District's Application by a four-to-one vote. The commissioners found a lack of information to comply with the requirements of Government Code section 56824.12.

The District filed suit against SJ LAFCO. The first claim for relief sought a judicial declaration whether the District has the right to provide retail electric service within its existing service territory without the prior approval of SJ LAFCO.

The District moved for summary adjudication on this first claim for relief arguing that while providing retail electric service might be a new or different service, SJ LAFCO had no authority to authorize or prohibit a special district from providing a new service in its territory. It recognized that the provisions of article 1.5 (commencing with § 56824.10) of chapter 5, part 3, division 3 of title 5 of the Government Code (hereafter Article 1.5) set forth procedures for LAFCO approval of new or different services by a special district. It argued, however, those provisions applied only where the special district was required by another statute to obtain LAFCO approval.

In support of its motion for summary adjudication, the District requested the court take judicial notice of certain items of legislative history and other documents.

PG&E opposed the motion, requesting the court take judicial notice of certain legislative history of Assembly Bill No. 948 (2001–2002 Reg. Sess.)

(Assem. Bill 948), the bill that added Article 1.5 to the Government Code. PG&E requested the court take judicial notice of three categories of legislative history: the bill history, legislative reports, and letters demonstrating legislative history.

PG&E also moved for judgment on the pleadings as to the declaratory relief cause of action. PG&E asserted that as a matter of law it was entitled to a declaration that the District must obtain prior written approval of SJ LAFCO before it could provide retail electric service.

SJ LAFCO joined in PG&E's opposition to the District's motion for summary adjudication and in PG&E's motion for judgment on the pleadings.

The trial court granted the District's request for judicial notice as to all items except two. It denied the request as to SJ LAFCO's response to the District's request for admissions and a 1983 executive officer's report of an SJ LAFCO meeting. The court granted PG&E's request for judicial notice of the first two categories of legislative history, the bill history and legislative reports. It denied taking judicial notice of the third category, letters, pursuant to *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 37–38 [34 Cal.Rptr.3d 520].

The court denied the District's motion for summary adjudication and granted PG&E's motion for judgment on the pleadings. It found the District was required to seek SJ LAFCO approval to exercise latent powers, such as providing retail electric service.

## DISCUSSION

### I. *Judicial Notice*

The District requests this court take judicial notice of several items. We grant the request in part.

The first category of items is selected legislative history of Assembly Bill No. 948. These items are in the record, having been offered by either the District or PG&E below. They do not include the letters. The trial court properly took notice of these items under *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc., supra*, 133 Cal.App.4th 26, 31–37. We shall also take judicial notice of them. (Evid. Code, § 459, subd. (a)(1).)

The second item is the policies and procedures of Stanislaus LAFCO. The trial court properly took judicial notice of these local agency regulations.

(*Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 128, fn. 2 [50 Cal.Rptr.3d 135].) We grant the request for judicial notice. (Evid. Code, § 459, subd. (a)(1).)

The third item is a 1983 report of an SJ LAFCO meeting concerning the District's sphere of influence. The trial court denied taking judicial notice of this report because the District failed to provide a legal basis and the report was not properly authenticated. We decline to take judicial notice of this document as it is not necessary to our resolution of the case. (*Aguiar v. Cintas Corp. No. 2, supra*, 144 Cal.App.4th 121, 128, fn. 2.)

Finally, the District requests this court take judicial notice of Government Code former section 56451. We grant the request. (Evid. Code, §§ 452, subd. (a), 459, subd. (a).)

## II. *Government Code sections 56824.10–56824.14*

As this case turns on the scope and interpretation of a recent addition to the Government Code, we begin with the language of the statute. (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 507 [66 Cal.Rptr.3d 52, 167 P.3d 666].) In 2001, the Legislature passed Assembly Bill No. 948, which made certain changes to the law governing LAFCO's. (Stats. 2001, ch. 667.) In particular, it added Article 1.5, containing sections 56824.10 through 56824.14 of the Government Code (all further unspecified statutory references are to the Government Code). (Stats. 2001, ch. 667, § 13.5.) These sections provide as follows:

Section 56824.10: "Commission proceedings for the exercise of new or different functions or classes of services by special districts may be initiated by a resolution of application in accordance with this article."

Section 56824.12: "(a) A proposal by a special district to provide a new or different function or class of services within its jurisdictional boundaries shall be made by the adoption of a resolution of application by the legislative body of the special district and shall include all of the matters specified for a petition in Section 56700, and be submitted with a plan for services prepared pursuant to Section 56653. The plan for services for purposes of this article shall also include all of the following information:

"(1) The total estimated cost to provide the new or different function or class of services within the special district's jurisdictional boundaries.

"(2) The estimated cost of the new or different function or class of services to customers within the special district's jurisdictional boundaries. The estimated costs may be identified by customer class.

"(3) An identification of existing providers, if any, of the new or different function or class of services proposed to be provided and the potential fiscal impact to the customers of those existing providers.

"(4) A plan for financing the establishment of the new or different function or class of services within the special district's jurisdictional boundaries.

"(5) Alternatives for the establishment of the new or different functions or class of services within the special district's jurisdictional boundaries.

"(b) The clerk of the legislative body adopting a resolution of application shall file a certified copy of that resolution with the executive officer. Except as provided in subdivision (c), the commission shall process resolutions of application adopted pursuant to this article in accordance with Section 56824.14.

"(c)(1) Prior to submitting a resolution of application pursuant to this article to the commission, the legislative body of the special district shall conduct a public hearing on the resolution. Notice of the hearing shall be published pursuant to Sections 56153 and 56154.

"(2) Any affected local agency, affected county, or any interested person who wishes to appear at the hearing shall be given an opportunity to provide oral or written testimony on the resolution."

Section 56824.14: "(a) The commission shall review and approve or disapprove with or without amendments, wholly, partially, or conditionally, proposals for the establishment of new or different functions or class of services within the jurisdictional boundaries of a special district after a public hearing called and held for that purpose.

"(b) At least 21 days prior to the date of that hearing, the executive officer shall give mailed notice of the hearing to each affected local agency or affected county, and to any interested party who has filed a written request for notice with the executive officer. In addition, at least 21 days prior to the date of that hearing, the executive officer shall cause notice of the hearing to be published in accordance with Section 56153 in a newspaper of general circulation that is circulated within the territory affected by the proposal proposed to be adopted.

"(c) The commission may continue from time to time any hearing called pursuant to this section. The commission shall hear and consider oral or written testimony presented by any affected local agency, affected county, or any interested person who appears at any hearing called and held pursuant to this section."

■ The District contends it has long had the right to provide retail electric service. Water Code section 22115 provides that irrigation districts "may provide for the acquisition, operation, leasing, and control of plants for the generation, transmission, distribution, sale, and lease of electric power, including sale to municipalities, public utility districts, or persons."

■ The District argues there is no provision giving SJ LAFCO express authority to approve new services by a special district. Section 56375 sets forth certain powers and duties of a LAFCO. It provides a LAFCO has the power "[t]o authorize a city or district to provide new or extended services outside its jurisdictional boundaries pursuant to Section 56133." (§ 56375, subd. (p).) Section 56375 contains no similar provision for the extension of services within existing boundaries.

There are explicit requirements for LAFCO approval in other situations. Section 56129 requires LAFCO approval for a special district to provide gas or electric service where as a result of a change of organization or a reorganization, the district's territory includes territory of a public utility that has been granted a certificate of public convenience and necessity authorizing and requiring it to provide gas or electric service. Section 56133 requires LAFCO approval for a special district to provide new or extended services outside its jurisdictional boundaries. Neither of these situations are present here.

The District argues Article 1.5 is permissive, not mandatory. The opening language in section 56824.10 provides that LAFCO proceedings "may" be initiated by a resolution of application. The District contends the use of "may" rather than "shall" shows the proceedings are permissive not mandatory. " 'Shall' is mandatory and 'may' is permissive." (§ 14.)

Despite the use of "may" in section 56824.10, Article 1.5 uses "shall" in setting forth the procedure to be followed by both the special district and LAFCO. "A proposal by a special district to provide a new or different function or class of services within its jurisdictional boundaries *shall* be made by the adoption of a resolution of application by the legislative body of the special district and *shall* include . . . ." (§ 56824.12, subd. (a), italics added.) "The commission *shall* review and approve . . . proposals for the establishment of new or different functions or class of services within the jurisdictional boundaries of a special district . . . ." (§ 56824.14, subd. (a), italics added.)

SJ LAFCO and PG&E contend sections 56824.12 and 56824.14 provide the explicit authority for SJ LAFCO to approve or deny the District's plan to provide retail electric service. They contend that while "may" is usually

permissive, "may" can mean "must" when the context requires. (*Hollman v. Warren* (1948) 32 Cal.2d 351, 356 [196 P.2d 562] [construing "may" in section 8200 as mandatory]; *Hess Collection Winery v. Agricultural Labor Relations Bd.* (2006) 140 Cal.App.4th 1584, 1607 [45 Cal.Rptr.3d 609] [construing "may" in Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (Lab. Code, § 1140) as mandatory]; *In re Covina Argus-Citizen* (1960) 177 Cal.App.2d 315, 318–319 [2 Cal.Rptr. 184] [construing "may" in section 6024 as mandatory]; § 5 [providing general rules of construction apply unless context requires otherwise].) They note the other provisions of the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (LAFCO Act) (§ 56000 et seq.) use "may" where the context is clear that LAFCO approval is mandatory. For example, section 56650 provides, "Commission proceedings for a change of organization or a reorganization may be initiated by petition or by resolution of application in accordance with this chapter." Yet it is clear that LAFCO approval is required for a change of organization or a reorganization. (§ 56375, subd. (a).)

 Interpreting Article 1.5 as entirely permissive would be nonsensical. There would be no point in establishing a detailed, timely and costly procedure for LAFCO approval if a disappointed applicant could simply disregard the decision of LAFCO and proceed with its plan to provide a new or different service. In interpreting a statute we avoid an interpretation that would lead to absurd results. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

The District contends the procedure set forth in Article 1.5 applies only in a limited circumstance, where a special district is already subject to regulation by the LAFCO. Prior to the adoption of Assembly Bill No. 948, SJ LAFCO had authority to adopt regulations concerning special districts to limit the services the special district provided. (Former § 56820 et seq.) These provisions were repealed by Assembly Bill No. 948 in 2001. (Stats. 2001, ch. 667, §§ 5–7.) SJ LAFCO never adopted regulations regarding the District. The District contends the procedures set forth in Article 1.5 for LAFCO approval of a special district's plan to provide new or different services applies only to special districts that are subject to regulations previously adopted by the LAFCO. Since SJ LAFCO did not adopt such regulations, the District asserts Article 1.5 does not apply to it.

Nothing in Article 1.5 supports the District's argument. There is no mention that special districts must be subject to regulation by the LAFCO for its provisions to apply.

The District contends the legislative intent behind Assembly Bill No. 948 was to curtail the power of LAFCO's. SJ LAFCO and PG&E contend the

legislative history shows the Legislature intended to require LAFCO approval before a special District can exercise a latent[1] power within its territory. We turn now to the legislative history of Assembly Bill No. 948.

## III. *Legislative History*

Prior to the adoption of Assembly Bill No. 948, LAFCO's had authority over a special district's exercise of latent powers through the ability to promulgate regulations governing the exercise of such powers. (Former §§ 56425, subd. (h)(3), 56820, 56820.5.) The original version of Assembly Bill No. 948 deleted these provisions. The Legislative Counsel's Digest explained the bill would repeal existing law that required each LAFCO to develop a sphere of influence for each local government agency and determine "no new or different function or class of service shall be provided by any existing district, except upon approval by the commission." (Legis. Counsel's Dig., Assem. Bill No. 948 (2001–2002 Reg. Sess.).)

In March 2001, an amendment to Assembly Bill No. 948 required a special district to "request and receive written approval from the commission before providing a new or different function or class of service inside its jurisdictional boundaries." (Legis. Counsel's Dig., Assem. Bill No. 948 (2001–2002 Reg. Sess.) as amended Mar. 27, 2001, italics omitted.) This change was accomplished by the addition of a new section 56133, subdivision (a), which read: "A district may provide a new or different function or class of service inside its jurisdictional boundaries only if it first requests and receives written approval from the commission in the affected county."

An amendment in April deleted the new section 56133, subdivision (a). The District argues this deletion shows the Legislature did not intend LAFCO's to have authority to approve or deny new services by special districts. The April amendments did not simply delete the new section 56133, subdivision (a). Instead, the amendment added procedures for LAFCO approval of the exercise of new services by special districts.

The April amendments provided Assembly Bill No. 948 would "enact provisions to govern commission proceedings to consider the exercise of new or different functions or services by special districts." (Legis. Counsel's Dig., Assem. Bill No. 948 (2001–2002 Reg. Sess.) as amended Apr. 19, 2001, italics omitted.) The amendment added a new article 3.5, which was substantially similar to the eventual Article 1.5. A bill analysis by the Assembly Committee on Local Government prepared for an April 25, 2001 hearing

---

[1] As we shall see, a "latent power" is a power granted a district by law but which the district is not actually exercising at the present time.

explained this change in the law. "Special districts often are granted authority to provide services that they do not immediately exercise. For instance, a water district may be given the authority to provide sewer service, but does not in fact do so initially. Such powers are referred to as 'latent powers.' A district's decision to engage in new or different functions by exercising some or all of its latent powers has the potential to impact the balance of services in a county. [Assembly Bill No.] 948 requires special districts, prior to exercising latent powers, to present LAFCO with a detailed plan and to receive written approval from LAFCO." (Assem. Com. on Local Gov., Analysis of Assem. Bill No. 948 (2001–2002 Reg. Sess.) as amended Apr. 19, 2001, p. 4.)

In June, Assembly Bill No. 948 was amended in the Senate. This amendment added Article 1.5, entitled "New or Different Services" and deleted article 3.5. An analysis by the Senate Local Government Committee explained current law allowed LAFCO's to adopt regulations to control services of special districts. "Assembly Bill 948 repeals the current provisions relating to LAFCOs' regulations controlling special districts' latent powers. Instead, [Assembly Bill No.] 948 creates a new set of procedures that allow a special district to apply to a LAFCO for permission to exercise new or different functions or services." (Sen. Com. on Local Gov., Analysis of Assem. Bill No. 948 (2001–2002 Reg. Sess.) as amended June 13, 2001, p. 2.)

The District argues the use of the term "allow" in the bill analysis shows that the new procedures of Article 1.5 are not mandatory. The analysis states the special district applies for "permission." The District fails to explain why a special district would seek permission from LAFCO unless it had to.

The enrolled bill report by the Governor's Office of Planning and Research confirms the mandatory nature of the new procedures of Article 1.5. It explained that existing law provides for regulations by LAFCO. "**AB 948** would repeal these provisions and create a new set of procedures that would require the legislative body of a special district to adopt a resolution and submit a proposal to the LAFCO for approval of new or different functions/services." Arguments in favor of Assembly Bill No. 948 included that "**AB 948** would establish a clear process for LAFCOs to follow when acting on special district applications to provide a new or [different] service." (Original boldface.)

■ The legislative history of Assembly Bill No. 948, both the history of the bill and the analyses of it, indicates the new procedures of Article 1.5 are required when a special district seeks to exercise latent powers by providing new or different services. This conclusion is consistent with the purpose of LAFCO's as " 'the "watchdog" the Legislature established to guard against

the wasteful duplication of services . . . .' " (*Bookout v. Local Agency Formation Com.* (1975) 49 Cal.App.3d 383, 388 [122 Cal.Rptr. 668].)

## IV. *New or Different Service*

Finally, the District contends its plan to provide retail electric service is neither a new nor a different service from its provision of wholesale electric service, so there is no need for LAFCO approval. The District relies on Water Code section 22115, which grants irrigation districts the right to provide electric service. Water Code section 22115 makes no distinction between wholesale or retail electric service. The District contends there is no authority for distinguishing between wholesale and retail electric service.

■ Article 1.5 applies to "the exercise of new or different functions or classes of services by special districts." (§ 56824.10.) The LAFCO Act defines "service" as "a class established within, and as part of, a single function, as provided by regulations adopted by the commission . . . ." (§ 56074.) SJ LAFCO never adopted regulations, so the District contends retail electric service cannot be deemed a new service.

■ In construing a statute, we give words their usual and ordinary meaning. (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 [67 Cal.Rptr.3d 468, 169 P.3d 889].) The District argues retail electric service is the same type of service as wholesale electric service, noting the example used in the bill analysis as an example of a latent power was sewer service, a different type of service. While wholesale and retail electric service may be the same type of service, using the ordinary meaning of words, retail electric service is certainly a different class of service than wholesale electric service as it requires a different customer base and a different distribution system. Recognizing as much, the District repeatedly characterized retail electric service as a "new service" in its Application to SJ LAFCO.

■ The distinction between retail and wholesale electric service is most apparent in the regulation of each. The Federal Energy Regulatory Commission has jurisdiction over " 'the sale of electric energy at wholesale in interstate commerce,' " while the California Public Utilities Commission has jurisdiction over all retail sales of electricity in California. (*Duke Energy Trading and Marketing, L.L.C. v. Davis* (9th Cir. 2001) 267 F.3d 1042, 1045, fn. 2.) Case law recognizes the "important" distinction between retail and wholesale services. (See *Modesto Irrigation Dist. v. Pacific Gas and Elec.* (N.D.Cal. 2004) 309 F.Supp.2d 1156, 1158, fn. 3.)

■ In planning to expand its service to retail electric service, the District sought to provide a new or different class of services and needed the approval

of SJ LAFCO under Article 1.5. The trial court did not err in denying the District's motion for summary adjudication and granting PG&E's motion for judgment on the pleadings as to the first claim for relief in the District's complaint.

## DISPOSITION

The petition for a writ of mandate or prohibition is denied. The alternative writ, having served its purpose, is discharged. SJ LAFCO and PG&E are awarded their costs. (Cal. Rules of Court, rule 8.490(m)(1).)

Sims, Acting P. J., and Butz, J., concurred.