[No. B226743. Second Dist., Div. Eight. Jan. 18, 2012.]

WATER REPLENISHMENT DISTRICT OF SOUTHERN CALIFORNIA,
Plaintiff and Appellant;
v.
CITY OF CERRITOS et al., Defendants and Respondents;
CITY OF LAKEWOOD et al., Defendants and Appellants;
CENTRAL BASIN MUNICIPAL WATER DISTRICT, Intervener and
Respondent.

COUNSEL

Alston & Bird, Edward J. Casey and Tammy L. Jones for Plaintiff and Appellant.

Lagerlof, Senecal, Gosney & Kruse and William F. Kruse for Defendants and Appellants City of Lakewood and City of Long Beach.

Brownstein Hyatt Farber Schreck, Scott S. Slater, Stephanie Osler Hastings and Russell M. McGlothlin for Defendant and Appellant Golden State Water Company.

Carmen A. Trutanich, City Attorney, Richard M. Brown and Julie C. Riley, Deputy City Attorneys, for Defendant and Appellant City of Los Angeles.

Leal-Trejo and Francisco Leal for Defendant and Appellant City of Huntington Park.

Willard Yamaguchi, Chief Deputy City Attorney, for Defendant and Appellant City of Vernon.

Kidman, Behrens & Tague, Arthur G. Kidman, David D. Boyer, Patricia J. Quilizapa; Aleshire & Wynder, David J. Aleshire and Patricia J. Quilizapa for Defendants and Respondents.

Sedgwick, Curtis D. Parvin, Douglas E. Wance and Douglas J. Collodel for Intervener and Respondent.

---

OPINION

**FLIER, J.**—This case concerns unused storage space in the Central Basin, an " 'area containing a groundwater reservoir capable of furnishing a substantial water supply.' " (*Central and West Basin Water Replenishment Dist. v. Southern Cal. Water Co.* (2003) 109 Cal.App.4th 891, 896–897, fn. 1 [135 Cal.Rptr.2d 486] (*WRD I*).) The Central Basin extends underneath approximately 277 square miles and provides a source of water for cities, municipalities, water companies, school districts, landowners, and others. (*Id.* at p. 898.) Appellants seek to amend a judgment, originally issued in 1965, which, among other things, allocated the right to extract water from the Central Basin. (*Id.* at p. 899.)

In 2003, we considered a motion seeking to allocate the underground storage space in the Central Basin to persons with the adjudicated right to

extract water from the Central Basin. We found that although the court had jurisdiction to consider the motion, the proposed allocation was inconsistent with the mandate for the beneficial use of water as required by the California Constitution. (*WRD I, supra*, 109 Cal.App.4th at pp. 903–904, 912–913.) Article X, section 2 of the California Constitution mandates that: "the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such water is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare."

In 2009, appellants moved to amend the judgment to allocate storage space in a manner different from the proposed allocation we considered in 2003. The trial court did not consider appellants' motion on the merits, but concluded that it lacked jurisdiction to hear the motion in general and to implement specific proposed amendments including (1) contracts between water right holders in the Central and West Coast Basins and (2) the appointment of one appellant as the new watermaster. On appeal, appellants challenge the court's conclusion that it lacked jurisdiction.

Because we previously held that the court had jurisdiction to consider a motion to allocate storage in the Central Basin, we reach the same conclusion here under the doctrine of law of the case. (*WRD I, supra*, 109 Cal.App.4th 891.) We also conclude that the court erred in (1) finding it lacked jurisdiction to consider a provision governing the contractual transfer of water and (2) finding it was prohibited from appointing one of the appellants as watermaster. We reverse the trial court's order. As this appeal is limited to jurisdictional questions, we do not reach the merits and express no opinion on the desirability of any proposed amendment.

## BACKGROUND

1. *Parties*

Appellant Water Replenishment District of Southern California (WRD) was created by statute for the purpose of replenishing the Central and West Coast Basins. (Wat. Code, § 60000 et seq.)[1] Other appellants are the Cities of Lakewood, Long Beach, Los Angeles, Huntington Park and Vernon as well as

---

[1] Undesignated statutory citations are to the Water Code unless otherwise stated.

the Golden State Water Company. Respondents are the Cities of Cerritos, Downey and Signal Hill and intervener Central Basin Municipal Water District (CBMWD).[2]

In addition to the parties, more than 100 other entities have an adjudicated right to extract water from the Central Basin. (*WRD I, supra,* 109 Cal.App.4th at pp. 896–897.) According to appellants, collectively appellants hold over 50 percent of the total permissible pumping allocation from the Central Basin.[3]

2. *1965* Inter Se *Judgment*

WRD's predecessor sued over 500 parties, resulting in a 1965 consent judgment declaring and establishing water rights in the Central Basin and enjoining extractions from the Central Basin in excess of specified quantities. (*WRD I, supra,* 109 Cal.App.4th at p. 898.) To meet water requirements in the Central Basin, the judgment imposed a physical solution—"an equitable remedy designed to alleviate overdrafts and the consequential depletion of water resources in a particular area, consistent with the constitutional mandate to prevent waste and unreasonable water use . . . ." (*California American Water v. City of Seaside* (2010) 183 Cal.App.4th 471, 480 [107 Cal.Rptr.3d 529], citing Cal. Const., art. X, § 2.) The court appointed California's Department of Water Resources as the watermaster to assist the court in administering and enforcing the judgment.

The court reserved continuing jurisdiction to among other things (1) review its "determination of the permissible level of extractions from the Central Basin in relation to achieving a balanced basin and an economic utilization of Central Basin for ground water storage, taking into account any then anticipated artificial replenishment of Central Basin . . ."; (2) appoint a new watermaster and revise the duties of the watermaster; and (3) "provide for such other matters as are not contemplated by the judgment and which might occur in the future,

---

[2] We distinguish between respondents in the text only when necessary. In their brief, Cities of Cerritos, Downey, and Signal Hill argued (1) the court does not have jurisdiction over rights and management over the use of storage space; (2) the court does not have jurisdiction over interbasin transfers; and (3) the order denying the 2009 motion is not appealable. In its brief, CBMWD argued: (1) Water Code section 60231 and Government Code sections 56824.10 to 56824.14 are applicable and required WRD to investigate whether its duties could be accomplished by an existing agency to avoid duplication; and (2) the trial court lacked jurisdiction to amend the judgment as requested by appellants.

[3] Some appellants sought amendments to the separate judgment governing the West Coast Basin. The Supreme Court recently granted review of that case on December 21, 2011. (*Hillside Memorial Park & Mortuary v. Golden State Water Co.,* S197767.)

and which if not provided for would defeat any or all of the purposes of this judgment to assure a balanced Central Basin subject to the requirements of Central Basin Area for water required for its needs, growth and development."

### 3. *Second Amended Judgment*

The May 1991 second amended judgment is the operative judgment. Like its predecessor, it not only declared the parties' rights but also appointed California's Department of Water Resources as watermaster. As in the 1965 judgment, the court retained continuing jurisdiction.

### 4. *Prior Proposed Third Amended Judgment*

In 2001, several parties who held the right to extract water from the Central Basin sought to amend the second amended judgment to utilize unused storage space in the Central Basin. (*WRD I, supra*, 109 Cal.App.4th at p. 897.) They sought an adjudication of the rights to use underground storage space and argued that the "total usable storage space" should be divided among those with the right to extract water from the Central Basin (hereafter Pumpers). (*Id.* at p. 900.) In 2003, we held that "[t]he allocation of storage space falls within this broad provision" reserving jurisdiction contained in the second amended judgment. (*Id.* at p. 903.) But, we rejected the theory that the right to extract water creates a concomitant right to store water, which was the sole allocation proposed by the appellants in that case. (*Id.* at p. 917.) Stated otherwise, we held that storage space may be considered but the particular proposed allocation of storage rights conflicted with California law. We also rejected the argument that the retention of jurisdiction contravenes the rule that a court cannot adjudicate future water rights. (*Id.* at p. 904 [distinguishing *City of Pasadena v. City of Alhambra* (1949) 33 Cal.2d 908, 917 [207 P.2d 17] & *Orange County Water Dist. v. City of Colton* (1964) 226 Cal.App.2d 642, 648–649 [38 Cal.Rptr. 286]].)

### 5. *Current Proposed Third Amended Judgment*

In 2009, another group of Pumpers and the WRD filed a different motion to amend the second amended judgment to allocate storage space in the Central Basin (Motion). The stated goal of the Motion was to utilize 330,000 acre-feet of "dewatered space" in the Central Basin to store water for later use. Appellants describe such storage space as an "important basin resource[] to be managed as an integrated whole." The current proposed third amended judgment (Proposal) includes multiple provisions governing the storage and extraction of stored water and proposes significant substantive revisions to the second amended judgment. The provisions challenged on appeal concern (1) the transfer of stored water between the Central and West Coast Basins through contractual agreements "without physically importing the water," and (2) the appointment of three watermaster bodies, which include WRD.

## 6. Trial Court Findings

In an order dated July 7, 2010, the trial court concluded it lacked jurisdiction to consider the Motion because the 1965 judgment did not allocate storage space in the Central Basin. It also concluded that it lacked jurisdiction to adjudicate water rights covering the West Coast Basin and was statutorily precluded from appointing WRD as a watermaster. This appeal followed.

## DISCUSSION

We first consider respondents' challenge to the appealability of the trial court's order. We then discuss appellants' arguments that (1) the trial court has jurisdiction to consider storage allocation in the Central Basin; (2) the trial court has jurisdiction to consider contractual transfers between the Central and West Coast Basins; and (3) the trial court is not precluded from appointing WRD as watermaster. Finally, we explain why respondents' remaining arguments lack merit.

## 1. Appealability

Respondents claim that *City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595 [120 Cal.Rptr.3d 699] (*Rikuo*) bars the current appeal because it is from a consent judgment. We disagree.[4]

■ "'As a general proposition, a party may not appeal a consent judgment'" or an order following a "nonappealable consent judgment." (*Rikuo, supra*, 192 Cal.App.4th at pp. 600–601; but see *Bernardi v. City Council* (1997) 54 Cal.App.4th 426, 434, fn. 9 [63 Cal.Rptr.2d 347].) The general proposition does not affect the appellate court's subject matter jurisdiction, but instead is a separate rule of nonappealability based on the theory that " 'by consenting to the judgment or order the party expressly waives all objection to it, and cannot be allowed afterwards, on appeal, to question its propriety . . . .' " (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400 [87 Cal.Rptr.2d 453, 981 P.2d 79].) The rule of nonappealability "covers cases in which the parties intended a full and final settlement of their dispute" (*Norgart*, at p. 401) such as *Rikuo* in which the judgment stated that "it was intended to resolve all of the issues in controversy between the parties . . ." (*Rikuo*, at p. 603).

■ That rule, however, is inapplicable here because the second amended judgment expressly reserved jurisdiction unto the court to "redetermine"

---

[4] We previously denied respondents' motion to dismiss the appeal based on the same ground.

matters, an unusually broad reservation of jurisdiction appropriate in water rights cases. (*City of Pasadena v. City of Alhambra, supra*, 33 Cal.2d at p. 937.) In water cases involving a physical solution, a trial court not only has the power, but also has the duty to exercise its power to work out a solution consistent with the policy to beneficially use water. (*California American Water v. City of Seaside, supra*, 183 Cal.App.4th at p. 480.) The grant of jurisdiction to redetermine matters and the duty to ensure the reasonable beneficial use of water distinguishes this case from most consent judgments and renders inapplicable the general rule that by consenting to a judgment, a party waives all opposition to the judgment. In contrast to *Rikuo*, here the judgment was not intended to resolve all issues in controversy between the parties. *Rikuo* does not bar the current appeal.

### 2. *Jurisdiction in General*

Appellants challenge the trial court's finding that it lacked jurisdiction to consider the Motion because the storage of water was not adjudicated in the 1965 judgment. Applying the doctrine of law of the case, we conclude the trial court erred in finding that "any attempt to modify the Judgment to include storage rights is beyond this court's jurisdiction." As we explain, our prior opinion held just the opposite.

In the prior appeal, WRD argued the court lacked jurisdiction to consider a motion seeking to allocate storage space in the Central Basin because the original action did not include an allocation of storage space and jurisdiction cannot be expanded to include matters excluded from the 1965 judgment. We rejected WRD's argument that the scope of the 1965 judgment precluded consideration of a motion to allocate storage rights. We held that the allocation of storage space fell within the following broad reservation of jurisdiction: " '[t]o provide for such other matters as are not contemplated by the judgment and which might occur in the future, and which if not provided for would defeat any or all of the purposes of this judgment to assure a balanced Central Basin subject to the requirements of Central Basin Area for water required for its needs[,] growth and development.' " (*WRD I, supra*, 109 Cal.App.4th at p. 903.) We distinguished *Big Bear Mun. Water Dist. v. Bear Valley Mutual Water Co.* (1989) 207 Cal.App.3d 363 [254 Cal.Rptr. 757], a case respondents rely on, and concluded that the broad retention of jurisdiction in the Central Basin litigation differed substantially from the more narrow provision in *Big Bear*. We also found jurisdiction was proper notwithstanding the fact that in the original pleadings "[n]o relief was requested with respect to the use of the storage space in the Central Basin." (*WRD I*, at p. 899.)

Applying our prior holding—as required by the doctrine of law of the case—we reject respondents' argument that the trial court lacked jurisdiction

to consider the allocation of storage space. "Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94 [41 Cal.Rptr.3d 319, 131 P.3d 400]; see also *Moore v. Kaufman* (2010) 189 Cal.App.4th 604, 617 [117 Cal.Rptr.3d 196].) Our prior holding that the court had jurisdiction to review the motion seeking to allocate the storage space in the Central Basin was necessary to the prior decision and must be applied in the current case.

### 3. *Jurisdiction over Transfer of Stored Water*

Respondents successfully challenged the following proposed amendment to the second amended judgment: "Transfer of Stored Water Across West Coast Basin Boundary. Consistent with the concurrent amendments to the West Coast Basin Judgment, parties to this Judgment may receive a transfer of Stored Water from the West Coast Basin without physically importing the water. A Party holding an Allowed Pumping Allocation in the Central Basin may contract to receive a transfer of water then held in storage in the West Coast Basin, subject to the terms of this Judgment. . . . A party proposing an interbasin transfer of Stored Water in excess [of defined limits] shall present substantial evidence that such transfer will not cause Material Physical Harm. Once approved, such transfer shall be deemed to increase the receiving Party's Stored Water . . ." subject to certain conditions including that replenishment of extracted stored water would occur in the Central Basin. The trial court found that interbasin transfers of water "would create new types of water rights not previously adjudicated [and] the original Judgment could not have retained jurisdiction to pass upon new and different issues based upon after-acquired rights."

There is no dispute that the trial court lacked authority to adjudicate water rights in the West Coast Basin. That basin is subject to a different judgment. Appellants acknowledge that, in the current case, they do not seek an adjudication of water rights in the West Coast Basin, but instead propose a method of calculating extractions from the Central Basin. As previously explained, the trial court has broad jurisdiction to consider storage allocation in the Central Basin. The proposed transfer provision falls within the court's broad jurisdiction "[t]o provide for such other matters as are not contemplated by the judgment and which might occur in the future, and which if not provided for would defeat any or all of the purposes of this judgment to assure a balanced Central Basin subject to the requirements of Central Basin Area for water required for its needs, growth and development." The trial court therefore should consider the proposed amendment on the merits to determine if it is consistent with the constitutional mandate to use the state's

water resources for "beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. . . ." (Cal. Const., art. X, § 2.) In short, the court erred in concluding it lacked jurisdiction to consider the provision on the merits.

4. *Watermaster*

Appellants' final challenge is to the court's conclusion it was prohibited from appointing WRD as watermaster. The watermaster serves as an arm of the court to "assist the Court in the administration and enforcement of the provisions of this judgment . . . ." The court found that appointing WRD would enlarge its powers and would constitute an ultra vires act.

An agency that exceeds the scope of its statutory authority acts ultra vires and the act is void. (See *Turlock Irrigation Dist. v. Hetrick* (1999) 71 Cal.App.4th 948, 951 [84 Cal.Rptr.2d 175].) For example, an irrigation district's attempt to provide natural gas service was held ultra vires because the statutes governing the district limited it to providing water, electricity, and drainage. (*Ibid.*) Similarly, contracts entered into by a district that exceeded the scope of its power were void. (*Allen v. Hussey* (1950) 101 Cal.App.2d 457, 472 [225 P.2d 674].) Thus, under the ultra vires doctrine conduct by an agency lacking authority to engage in that conduct is void.

But that doctrine is inapplicable here because the issue is not whether conduct engaged in by WRD exceeded the scope of its power, but whether the court has authority to appoint WRD as watermaster. If WRD were appointed watermaster, its conduct would be judicially authorized and therefore would not be ultra vires. The ultra vires doctrine does not support the conclusion that WRD cannot serve as watermaster.

The second amended judgment furnishes no support for respondents' argument that WRD is prohibited from serving as watermaster. The retention of jurisdiction does not limit the court's selection of watermaster. The court retained jurisdiction "[t]o remove any Watermaster appointed from time to time and appoint a new Watermaster; and to review and revise the duties, powers and responsibilities of the Watermaster and to make such other and further provisions and orders of the Court that may be necessary or desirable

for the adequate administration and enforcement of the judgment." Thus, under the retention of jurisdiction, the court may select an appropriate watermaster.

▪ Nor has the Legislature limited the court's selection of a watermaster as it has not named a watermaster for the Central Basin. Respondents identify no statute prohibiting WRD from serving in that capacity or limiting WRD's power in a manner inconsistent with service as an arm of the court to assist with a judgment governing water rights including the storage of water in the Central Basin. WRD "may do any act necessary to replenish the ground water" in the Central Basin including "[s]tore, transport . . . or otherwise manage and control water for the beneficial use of persons or property within the district." (§§ 60220, 60221, subd. (e).) However, if WRD were selected as an arm of the court, the court must implement safeguards to avoid either an actual conflict of interest or the appearance of a conflict of interest given WRD's status as a party to this litigation. (See Cal. Code Jud. Ethics, canon 2A ["A judge . . . shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." (boldface omitted)].) In short, the court should consider the proposed amendment on the merits, rather than summarily denying it.

## 5. Respondents' Remaining Arguments Lack Merit

### A. Due Process

At oral argument, the parties disputed whether finding jurisdiction in the current case would implicate due process rights of potential persons who have a hypothetical right to store water in the Central Basin but lack the right to extract water from the Central Basin.[5] Respondents argued that such potential parties may not have notice of the proceedings. In response, appellants argued the trial court previously required them to give notice and that they would not object to additional reasonable notice requirements if necessary to comport with due process. (See *In re Robert A.* (1992) 4 Cal.App.4th 174, 192 [5 Cal.Rptr.2d 438] [court has inherent power to require notice to satisfy due process].) The stated need to afford additional persons notice does not undermine the conclusion that the trial court has jurisdiction to adjudicate storage rights—the only issue on appeal.

### B. Appointment of CBMWD as Watermaster

CBMWD argues that it could "carry out the new activities the proposed amendment desires to give WRD" and argues that statutes precluding

---

[5] We express no opinion regarding who has the right to store water in the Central Basin or whether notice provided was sufficient to comport with due process.

duplication of agency services precludes WRD from serving as watermaster.[6] However, the concern for a duplication of agency services would arise only if the court appointed both WRD and another agency to the same role. Because that has not occurred, CBMWD fails to show that statutes prohibiting duplication are applicable. We express no opinion on whether CBMWD could serve as watermaster; instead, we conclude only that CBMWD fails to show WRD cannot serve as watermaster.

## C. Uniform Replenishment Assessment

CBMWD argues the trial court properly concluded it could not order a uniform replenishment assessment across the Central and West Coast Basins. With respect to the Central Basin judgment, appellants proposed uniform assessments on the extraction of water in the Central and West Coast Basins. The trial court found that considering the issue on the merits was "beyond the retained jurisdiction of the court." CBMWD's argument and the court's finding are inconsistent with the broad reservation of jurisdiction and with our prior holding that the court had jurisdiction to consider the allocation of storage space in the Central Basin. CBMWD identifies no bar to the parties to each judgment stipulating to a uniform assessment and no statutory authority prohibiting such a stipulation.[7] We express no opinion on the desirability of such a provision.

## D. Rights of Persons Not Parties to This Appeal

CBMWD states that the proposed amendments "would adversely impact the rights of 131 parties," and the rights of the public. Similarly, CBMWD argues that a court imposing a physical solution may not ignore priority rights of parties asserting those rights. These statements cannot be evaluated in the context of this appeal because they concern the merits of the Proposal, not the court's jurisdiction. Because the trial court did not consider the merits of the Proposal, any argument concerning the desirability of it is premature.

---

[6] Government Code sections 56824.10 to 56824.14 require approval by the Local Agency Formation Commission for a district to extend its services in order to " ' "guard against the wasteful duplication of services . . . ." ' [Citation.]" (*South San Joaquin Irrigation District v. Superior Court* (2008) 162 Cal.App.4th 146, 156–157 [76 Cal.Rptr.3d 104].) Similarly, Water Code section 60231, subdivision (a) seeks to "avoid duplication of similar operations by existing agencies and replenishment districts." Although respondents rely on these statutes, there is no duplication of services as there is no statutorily required watermaster for the Central Basin.

[7] Section 60316 sets forth criteria for determining the amount of a replenishment assessment. CBMWD neither cites this provision nor shows that uniformity across the Central and West Coast Basins would be inconsistent with the statutory requirements.

## DISPOSITION

The order dated July 7, 2010, is reversed. Appellants shall have their costs on appeal. The case is remanded to the trial court for the trial court to consider the Motion on the merits.

Bigelow, P. J., and Rubin, J., concurred.

Petitions for a rehearing were denied February 8, 2012, and the opinion was modified to read as printed above. The petition of defendants and respondents for review by the Supreme Court was denied May 9, 2012, S200423. Kennard, J., and Werdegar, J., did not participate therein.