Filed 5/18/23  Berney Law Corp. v. ClubCorp Porter Valley Country Club CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BERNEY LAW CORP., <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> CLUBCORP PORTER VALLEY COUNTRY CLUB, INC. et al., <br><br> Cross-defendants and Respondents. | B313888 <br><br> (Los Angeles County Super. Ct. No. BC669520) |

APPEAL from an order of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed.

Klapach & Klapach and Joseph S. Klapach for Cross-complainant and Appellant.

Foley & Lardner, Thomas F. Carlucci and Jaime Dorenbaum for Cross-defendants and Respondents ClubCorp Porter Valley Country Club, Inc.; ClubCorp Club Operations,

Inc.; CCA Club Operation Holdings, LLC; ClubCorp Holdings, Inc. and ClubCorp USA, Inc.

_____

A qui tam plaintiff who prevails in or settles an action under California's False Claims Act (CFCA) (Gov. Code, § 12650 et seq.)[1] is entitled to recover reasonable attorney fees from the defendant.  (§ 12652, subd. (g)(8).)[2]  If the qui tam plaintiff and defendant settle their action, agreeing to bear their own attorney fees, and the matter is dismissed with prejudice, may the qui tam plaintiff's counsel, who was not a party to the action or a signatory to the settlement agreement, bring a subsequent action against the settling defendant for statutory attorney fees under section 12652?  The trial court said no, sustained the defendants' demurrer without leave to amend and dismissed the action by counsel for the qui tam plaintiff.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Qui Tam Lawsuit*

Robert G. Bartlett, a former member of the Porter Valley Country Club in Los Angeles, sued the club and related entities

_____

[1]     Statutory references are to this code unless otherwise stated.

[2]     "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" (*Rockwell International Corp. v. United States* (2007) 549 U.S. 457, 463, fn. 2; *State ex rel. Bartlett v. Miller* (2016) 243 Cal.App.4th 1398, 1402, fn. 1.)

(collectively ClubCorp)[3] in 2011, alleging causes of action relating to the club's failure to refund his initiation deposit. Berney Law Corporation, Bartlett's counsel in that action, amended the complaint in 2012 to add a CFCA cause of action on behalf of Bartlett and the State of California, the qui tam claim, alleging ClubCorp had failed to escheat to the State unclaimed initiation deposits of ClubCorp's members and former members in violation of California's Unclaimed Property Law (Code Civ. Proc., § 1500 et seq.).[4]

In accordance with CFCA requirements, Bartlett filed his amended complaint under seal and served it on the State to allow the State to decide whether to intervene and prosecute the CFCA claim on its own behalf. In response, the State moved to dismiss the qui tam claim as jurisdictionally barred under section 12652, former subdivision (d)(3)(A), arguing ClubCorp had publicly disclosed in filings with the United States Securities and Exchange Commission its failure to escheat unclaimed deposits to the State. The trial court granted the State's motion (styled as a motion to dismiss rather than a demurrer or motion for judgment on the pleadings) and dismissed the qui tam claim, prompting Bartlett to voluntarily dismiss his remaining causes of action without prejudice and appeal from the judgment entered.

---

[3] Bartlett's lawsuit named ClubCorp Porter Valley Country Club, Inc., ClubCorp Club Operations, Inc., CCA Club Operation Holdings, LLC, ClubCorp Holdings, Inc. and ClubCorp USA, Inc. as defendants.

[4] Our recitation of the underlying qui tam claim borrows from our opinion in *State ex rel. Bartlett v. Miller, supra,* 243 Cal.App.4th at pages 1407-1408, 1410-1414.

Bartlett was represented on appeal by Howarth & Smith. We reversed, holding the trial court had applied an overly broad interpretation of section 12652, former subdivision (d)(3)(A)'s public disclosure bar (see *State ex rel. Bartlett v. Miller* (2016) 243 Cal.App.4th 1398, 1407-1408, 1410-1414) (*State ex rel Bartlett*), and remanded for further proceedings (*id.* at p. 1415).

2. *Settlement and Dismissal of Bartlett's Action Against ClubCorp*

In March 2017, following issuance of our remittitur in *State ex rel Bartlett,* Bartlett and ClubCorp settled the CFCA action for $3.1 million, with each side agreeing to bear its own attorney fees and costs. In accordance with the settlement terms, Howarth & Smith, on Bartlett's behalf, filed a request for dismissal with prejudice of all Bartlett's claims against ClubCorp.[5] The request for dismissal, filed on April 12, 2017 and entered the same day, provided, "Each party is to bear its own respective fees and costs related thereto."

3. *Post-dismissal Attorney Fee Agreement*

On April 18, 2017, one day after Bartlett's action against ClubCorp was dismissed with prejudice, Bartlett entered into an agreement with Berney Law and Howarth & Smith to pay each firm a specified amount in attorney fees from the proceeds of the settlement, nearly $1 million to Howarth & Smith and nearly $1.2 million to Berney Law. When ClubCorp remitted the $3.1 million in settlement funds to Howarth & Smith, the firm

---

[5] The request for dismissal entered by the court clerk specified all claims, including the qui tam claim, were dismissed with prejudice as to Bartlett; the qui tam claim was dismissed without prejudice as to the State.

transferred to Berney Law its share of the settlement proceeds in accordance with the April 2017 fee agreement.

4. *Berney Law's and Bartlett's Competing Claims for Declaratory Relief*

In July 2017 Bartlett repudiated the April 2017 fee agreement to the extent it required him to pay Berney Law any share of the settlement proceeds from the qui tam action and demanded Berney Law return the settlement monies it had obtained as fees. (Bartlett did not repudiate the agreement as to Howarth & Smith.)

After Bartlett's demand, Berney Law and Bartlett sued each other for declaratory relief. Berney Law, the first to file, sought a judicial declaration the April 2017 fee agreement was valid and enforceable. Alternatively, Berney Law requested "an award of attorney's fees and/or quantum meruit as deemed appropriate by the Court."

Bartlett cross-complained, requesting a judicial declaration the April 2017 attorney fee agreement with Berney Law was unenforceable as the product of fraud and elder abuse. Bartlett alleged he had retained Berney Law in 2011 on a contingency fee basis to sue ClubCorp on his behalf for matters relating to his membership. In February 2014, after Berney Law had amended Bartlett's complaint to add a qui tam cause of action and the State responded by filing a motion to dismiss, Bartlett entered into a new fee agreement with Berney Law and Howarth & Smith that expressly superseded his 2011 contingency fee agreement with Berney Law. According to Bartlett, the February 2014 agreement provided his attorneys would receive no fees if the State's then-pending motion to dismiss the qui tam cause of action was granted. In June 2014, after the State's motion was

granted, Bartlett entered into a new agreement with Howarth & Smith for additional legal work on the qui tam action in exchange for a percentage of any recovery. After the court of appeal revived the qui tam action, the parties settled; and ClubCorp remitted $3.1 million in settlement funds for Howarth & Smith to distribute. Immediately thereafter, Bartlett alleged, Berney Law falsely told Bartlett it was entitled to 50 percent of the settlement proceeds based on their 2011 contingency fee agreement. When Berney Law presented Bartlett with a new attorney fee agreement on April 18, 2017 (a date Berney Law knew was the "busiest day of the year" for Bartlett, a tax accountant) and demanded that he sign it and agree to provide Berney Law with 39 percent of the settlement proceeds as attorney fees, Bartlett did so.

5. *Berney Law's Cross-complaint and First Amended Cross-complaint Against ClubCorp*

Berney Law cross-complained against ClubCorp for declaratory relief, seeking a judicial declaration that, in the event the April 2017 fee agreement with Bartlett was declared legally invalid, ClubCorp was directly liable to Berney Law pursuant to section 12652, subdivision (g)(8), for Berney Law's statutory attorney fees.

In its original cross-complaint against ClubCorp, filed February 22, 2018, Berney Law alleged, "Pursuant to the March 27, 2017 settlement agreement between Bartlett and [ClubCorp], Bartlett agreed to pay [Berney Law]'s attorney's fees and costs. The amount of [Berney Law]'s attorney's fees and costs was agreed to by and between Bartlett and [Berney Law]" in an April 2017 agreement prepared by Berney Law's co-counsel in the qui tam action, Don Howarth of Howarth & Smith. In

reliance on the March 27, 2017 settlement agreement and the April 18, 2017 fee agreement, Berney Law "did not pursue its statutory claim for attorney's fees and costs" against ClubCorp.

Berney Law acknowledged that paragraph 9 of the settlement agreement between Bartlett and ClubCorp provided, "The Parties to this Agreement shall bear their own attorneys' fees, costs, and expenses.  ClubCorp shall not be liable to Bartlett's current or former counsel for attorneys' fees, costs, or expenses, and if Bartlett's current or former counsel asserts an attorney's lien or otherwise seeks any fees or costs from ClubCorp related to the Lawsuit, Bartlett shall indemnify and hold ClubCorp harmless."  However, Berney Law continued, "[Berney Law] was not a party to" the settlement agreement and thus "never waived its claims or rights to recovery of attorney's fees and expenses from ClubCorp."

Berney Law also admitted it had received $1,193,133.63 in fees and costs from the settlement proceeds.  However, because Bartlett had repudiated the April 2017 fee agreement and filed suit to have that agreement declared invalid, Berney Law had no choice but to file a protective cross-complaint seeking a judicial declaration that ClubCorp was directly liable to Berney Law for statutory attorney fees under section 12652, subdivision (g)(8), in the event the April 2017 fee agreement was nullified.

Berney Law's first amended cross-complaint included essentially the same allegations, except it deleted any reference to paragraph 9 of the confidential settlement agreement relating to attorney fees.

6. *ClubCorp's Successful Demurrer to the First Amended Cross-complaint*

ClubCorp demurred to Berney Law's first amended cross-complaint, asserting Berney Law had failed to allege facts sufficient to state a cause of action. ClubCorp argued section 12652, subdivision (g)(8), conferred on the qui tam plaintiff, not plaintiff's counsel, the right to demand fees from defendant; Bartlett had waived the right in the settlement agreement in which the parties expressly agreed to bear their own fees and costs; and the matter was dismissed against ClubCorp with prejudice. ClubCorp argued it had no further liability for fees as a matter of law. In addition, ClubCorp argued there was no present controversy between the parties that provided the basis for declaratory relief because Berney Law had received its attorney fees, and ClubCorp was not claiming a right to them. Together with its demurrer and supporting papers, ClubCorp requested the court take judicial notice of several documents, including the confidential settlement agreement filed under seal, the April 12, 2017 order dismissing the qui tam action against ClubCorp with prejudice and Russell Berney's deposition testimony describing his direct participation in the parties' settlement agreement.

Berney Law opposed the demurrer, arguing the right to statutory attorney fees under section 12652 belonged as a matter of law to the plaintiff's counsel in the qui tam action, who had earned them. Berney Law argued it was not a party to the qui tam action or settlement agreement and thus did not waive its right to statutory attorney fees under section 12652, subdivision (g)(8), and was not bound by the dismissal of that action with prejudice.

The trial court took judicial notice of the request for, and entry of, dismissal of the qui tam lawsuit with prejudice, but otherwise denied ClubCorp's request for judicial notice. Relying on *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equipment, Inc.* (9th Cir. 1996) 89 F.3d 574 (*Virani*), which interpreted an analogous fee-shifting provision under the federal False Claims Act (FCA) (31 U.S.C. § 3730), the court ruled that only the plaintiff has standing to request statutory fees. While *Virani* also held that once asked for and awarded, the fees belonged to the attorneys, no such fees were demanded by Bartlett, who had waived them. The court sustained ClubCorp's demurrer and granted Berney Law leave to amend.

7. *Berney Law's Operative Second Amended Cross-complaint*

Berney Law filed a second amended cross-complaint, again alleging a cause of action for declaratory relief and adding a new cause of action for promissory estoppel. In an apparent effort to remedy the deficiencies the court identified in its earlier ruling, Berney Law added the following allegations:

In paragraph 13 Berney Law alleged that in a February 2014 attorney fee agreement between it and Bartlett, "Bartlett agreed that the right to collect any statutory attorney's fees, including without limitation those available under Government Code section 12652(g)(8), belonged to Bartlett's attorneys," including Berney Law.

In paragraph 14 Berney Law alleged, "Upon information and belief, Bartlett had the power to demand that [ClubCorp] pay statutory attorney's fees . . . and Bartlett exercised that power in the *Qui Tam* Lawsuit. [O]nce that power was exercised by Bartlett, BLC's [Berney Law's] right to collect the statutory

9

attorney's fees vested in BLC and [ClubCorp's] duty to pay the attorney's fees became fixed upon, among other things, settlement of the *Qui Tam* Lawsuit." "[W]hen Bartlett and [ClubCorp] settled the *Qui Tam* Lawsuit, the statutory attorney's fees rights provided by Section 12652(g)(8) were triggered."

Finally, in paragraph 16 Berney Law alleged, "In the Settlement Agreement, Bartlett and [ClubCorp] agreed to pay BLC's attorney's fees and costs from the settlement monies. The specific dollar amount of BLC's attorney's fees and costs was agreed to by and between Bartlett and BLC" in the April 2017 postjudgment attorney fee agreement.

ClubCorp again demurred, asserting the new allegations failed to remedy the deficiencies in the first amended cross-complaint relating to lack of standing. It also argued the allegation concerning ClubCorp's agreement to pay Berney Law's fees was a sham amendment, contradicted by the allegations in Berney Law's original cross-complaint.

The trial court agreed with ClubCorp and sustained ClubCorp's demurrer to the declaratory relief action in the operative second amended complaint without leave to amend. The court sustained the demurrer to the promissory estoppel cause of action in that pleading with leave to amend.

8. *Berney Law's Third Amended Cross-complaint, ClubCorp's Demurrer and Entry of Judgment*

Berney Law filed a third amended cross-complaint alleging promissory estoppel and purporting to allege new causes of action for rescission of the settlement agreement as a third party beneficiary of that agreement and unjust enrichment. The trial court sustained ClubCorp's demurrer to that pleading without

10

leave to amend and entered judgment in ClubCorp's favor on Berney Law's cross-complaint.[6]  Berney Law timely appealed.

## DISCUSSION

### 1.  *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint.  We independently review the trial court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense.  (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)  We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has properly been taken.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967*; Regina v. State of California* (2023) 89 Cal.App.5th 386, 396-397), but liberally construe the pleading with a view to substantial justice between the parties.  (Code Civ. Proc., § 452; *Ivanoff v.*

---

[6]     Because Berney Law's appeal focuses on the court's ruling on the second amended cross-complaint and does not challenge the propriety of the court's ruling on the third amended cross-complaint, we do not recite in detail the substance of that latter pleading.

*Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; see *Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081.)

　　2. *CFCA and Attorney Fees*

　　CFCA is designed to prevent fraud on the public treasury. (*State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1296; *State ex rel. Bartlett, supra,* 243 Cal.App.4th at p. 1405.)  To assist the State and its political subdivisions in their efforts to protect the public fisc, CFCA authorizes private parties, referred to as qui tam plaintiffs or relators, to prosecute the claim for, and in the name of, the government entity.  (*State ex rel. Bartlett*, at p. 1406; see *John Russo Industrial Sheetmetal, Inc. v. City of Los Angeles Dept. of Airports* (2018) 29 Cal.App.5th 378, 384 ["CFCA 'is intended to ""'supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities'"'"].)  The State or its political subdivision may elect to intervene and assume control of the lawsuit (§ 12652, subd. (c)(4)-(8)), or not to intervene, leaving the qui tam plaintiff to prosecute the action on the State's behalf. (§ 12652, subd. (c)(6)(B), (7)(D)(ii), (8)(D)(iii); see *State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1228.)

　　To encourage private parties to initiate such actions, CFCA authorizes the qui tam plaintiff to recover a percentage of the proceeds recovered for the State or its political subdivision, with the minimum and maximum percentages of the recovery dependent on whether or not the State intervened.  (See § 12652, subd. (g)(2), (3).)  In addition, as pertinent here, section 12652, subdivision (g)(8), provides, "If the state, political subdivision, or the qui tam plaintiff prevails in or settles" the qui tam action, "the qui tam plaintiff shall receive" from the defendant

12

reasonable expenses necessarily incurred "plus reasonable costs and attorney's fees."[7]

3. *The Court Did Not Err in Ruling ClubCorp Was Not Liable to Berney Law for Statutory Attorney Fees as a Matter of Law*

In interpreting section 12652, subdivision (g)(8), our "'fundamental task here is to determine the Legislature's intent so as to effect the law's purpose.' [Citation.] 'We begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.] We must harmonize the various parts of the enactments by considering them in the context of the statutory [framework] as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.'" (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14.)

The plain language of section 12652, subdivision (g)(8), requires the court to award reasonable attorney fees to the "qui

---

[7] Section 12652, subdivision (g)(8), also provides in part, "All expenses, costs, and fees shall be awarded against the defendant and under no circumstances shall they be the responsibility of the state or political subdivision."

tam plaintiff" who prevails in or settles the action, not his or her counsel. Federal courts interpreting federal fee-shifting statutes authorizing attorney fee awards to the prevailing party have held that such language confers the right to attorney fees to the "prevailing party," not its counsel. (See, e.g., *Astrue v. Ratliff* (2010) 560 U.S. 586, 581 [prevailing litigant, rather than her lawyer, is entitled to fees under a fee-shifting provision of the Equal Access to Justice Act (28 U.S.C. § 2412(d)(1)(A))]; *Venegas v. Mitchell* (1990) 495 U.S. 82, 89 [entitlement to attorney fee award under federal civil rights fee-shifting provision (42 U.S.C. § 1988) belongs to the party, not its counsel]; *Virani, supra,* 89 F.3d 574 [interpreting analogous fee-shifting provision under FCA].)

Relying on *Flannery v. Prentice* (2001) 26 Cal.4th 572 (*Flannery*), which interpreted a fee-shifting provision under the Fair Employment and Housing Act (FEHA) awarding fees to the prevailing party,[8] Berney Law contends the California Supreme Court has rejected the federal courts' narrow interpretations of fee-shifting statutes that deny counsel the direct right to a statutory attorney fee award. In *Flannery* a jury awarded the plaintiff $250,000, and the court awarded her statutory attorney fees in the amount of $900,000. Plaintiff and her counsel then disputed who was entitled to the fee award. The plaintiff sued her former attorneys in a separate action for declaratory relief, asserting that she, as the prevailing party, was entitled to the

---

[8]     Section 12965, subdivision (c)(6), part of FEHA, authorizes the court, in its discretion, to award to "the prevailing party" reasonable attorney fees and costs, except that the prevailing defendant is not entitled to such costs and fees absent a finding the action was frivolous.

full amount of statutory fees awarded in the earlier action, not her counsel.  The attorneys cross-claimed, seeking a declaration they were entitled to the fee award in full and, in the alternative, sought recovery in quantum meruit.  (*Id.* at pp. 576-577.)

Identifying the question before it as "to whom, as between attorney and client, attorney fees awarded under [FEHA] belong when no contractual agreement provides for their disposition" (*Flannery, supra,* 26 Cal.4th at p. 575, fn. omitted), the Supreme Court held attorney fee awards pursuant to section 12965, excluding fees already paid, belonged, absent an agreement to the contrary, to the "attorneys who labored to earn them."  (*Id.* at pp. 575, 590.)  Highlighting the ambiguity inherent in the statute's use of "prevailing party" (see *id.* at p. 578 [the phrase "prevailing party" "does not unambiguously favor plaintiff"]) and examining the purpose of the fee-shifting provision, the Court explained attorney fee awards are intended as compensation to the attorneys and, absent an agreement otherwise, belong to them, not the party.  (See *id.* at p. 583 ["were we to interpret section 12965 as plaintiff urges, vesting ownership of fees awarded thereunder and not disposed of by contract in the litigant, rather than in counsel, we would diminish the certainty that attorneys who undertake FEHA cases will be fully compensated, and to that extent we would dilute section 12965's effectiveness at encouraging counsel to undertake FEHA litigation," thus undermining FEHA's purpose in providing effective remedies to eliminate discriminatory practices].)  The Court also observed its interpretation was consistent with public policy.  (*Id.* at p. 584 [our interpretation "[e]ncourage[s] representation of legitimate FEHA claimants, discourage[s]

15

nonmeritorious suits" among other harms, and avoids unjust enrichment to the litigant].)

California courts since *Flannery, supra,* 26 Cal.4th 572 have interpreted California fee-shifting statutes outside the FEHA context similarly, holding that, as between the party awarded fees and its counsel, the fee award belongs to the attorney. (See, e.g., *Aerotek, Inc. v. Johnson Group Staffing Co., Inc.* (2020) 54 Cal.App.5th 670, 680-682 [relying on *Flannery* to hold, in a dispute between party and its counsel over fees awarded to party under Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.), the award belonged to counsel absent agreement providing otherwise]; *Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1388 [holding "in accordance with *Flannery*, *supra*, 26 Cal.4th 572, that absent a contract determining a different disposition of an attorney fee award, attorney fees awarded under Labor Code sections 1194, subdivision (a) and 226, subdivision (e), in excess of fees already paid to the attorneys by the client, should be made payable directly to the attorney who provided the legal services"].)

Relying on *Flannery, supra,* 26 Cal.4th 572 and *Aerotek, supra,* 54 Cal.App.5th 670, Berney Law contends that, in the event its April 2017 fee agreement is not "enforceable," the *Flannery* rule governing the FEHA fee-shifting statute should also apply by analogy to section 12652. That is, Berney Law argues, it is entitled to pursue its statutory fees directly from ClubCorp.

*Flannery* does not assist Berney Law. *Flannery* addressed to whom fees awarded by the court belonged and determined, "as between the plaintiff and her counsel," they belonged to counsel absent a contrary agreement. Here, no fees were awarded at all.

16

(See *Beard v. Goodrich* (2003) 110 Cal.App.4th 1031, 1036 ["*Flannery* applies only to court-awarded fees. Here as discussed above, there are no court-awarded fees. The vacation of the judgment effectively eliminated the fee award. Nothing in *Flannery* supports the notion that an attorney is entitled to a fee award that was vacated as part of a postjudgment settlement"]; see also *Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566, 579, fn. 12 [despite some language in *Flannery* "suggesting that an analogous state-law attorneys' fees statute might confer standing on an attorney in order to recover fees, that case arose in the context of, and was limited to, an attorney-client dispute over fee ownership"].)

Berney Law contends support for its standing to seek fees directly against ClubCorp can be found in cases since *Flannery* that recognized an attorney's right to intervene in an action to protect its interest in statutory attorney fees. In *Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499 (*Lindelli*) the appellate court addressed "whether attorneys acting on their own behalf can intervene in a client's lawsuit and move for attorney fees under Code of Civil Procedure section 1021.5[9] which provides for fee awards in cases resulting in the enforcement of important rights affecting the public interest." (*Id.* at p. 1501.) After losing in the trial court and then prevailing on appeal, the

---

[9]     Code of Civil Procedure section 1021.5 provides in part, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which resulted in the enforcement of an important right affecting the public interest" if the action conferred a significant benefit on the general public or large class of persons and the necessity and financial burden of enforcement make the award appropriate.

plaintiffs refused to authorize their attorneys to file a motion for attorney fees in the trial court. The attorneys moved to intervene to file a motion for attorney fees on their own behalf. The trial court denied the motion for lack of standing because Code of Civil Procedure section 1021.5 authorized attorney fees to the "prevailing party," not the party's counsel. The court of appeal reversed. Finding Code of Civil Procedure section 1021.5's fee-shifting statute markedly similar in language to FEHA's attorney fee provision construed in *Flannery, supra,* 26 Cal.4th 572, the court of appeal held *Flannery*'s analysis applicable: That is, absent an agreement otherwise, attorney fees awarded pursuant to Code of Civil Procedure section 1021.5 belonged to the attorneys, not the prevailing litigant. Because the attorneys had a right to any fees ultimately awarded, the court explained, they "ha[d] a sufficiently direct and immediate interest to permit intervention and a motion for an award of [statutory] fees under section 1021.5." (*Lindelli*, at p. 1512.)

Similarly, in *Ruiz v. California State Automobile Assn. Inter-Insurance Bureau* (2013) 222 Cal.App.4th 596 (*Ruiz*), the plaintiff, on behalf of himself and a class of consumers, sued an insurer alleging the insurer had engaged in false and misleading billing practices. The parties ultimately settled their dispute and entered into a settlement agreement giving class counsel the right to seek an award of attorney fees from the court and requiring class counsel to accept, "in full satisfaction of their right to attorney fees, either the maximum specified in the [agreement] or the amount awarded by the trial court, whichever was less." (*Id.* at p. 601.) After the trial court approved the settlement and awarded attorney fees to class counsel in an amount considerably less than counsel requested, counsel

18

appealed. The insurer argued class counsel lacked standing to challenge the fee award directly because it had not formally intervened in the action. The court rejected that argument, holding that, despite the lack of class counsel's formal intervention, "we are persuaded that the analysis in *Lindelli, supra,* 139 Cal.App.4th 1499, extending the logic in *Flannery, supra,* 26 Cal.4th 572, leads inexorably to the conclusion that class counsel have standing, in their own right, to litigate the amount of attorney fees, both in the trial court and on appeal." (*Ruiz*, at p. 610.)

Berney Law paints the issue presented in the case at bar as a conflict between federal authorities narrowly interpreting federal fee-shifting statutes to limit fee awards to the party rather than counsel, on the one hand, and state authorities, following *Flannery, supra,* 26 Cal.4th 572, construing state fee-shifting statutes as conferring on counsel a "right" to a statutory fee award, on the other hand, and insists state law controls. (See *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 569 ["United States Supreme Court interpretation of federal statutes does not bind us to similarly interpret state statutes. Indeed, in the realm of attorney fees for private attorneys general, this court has markedly diverged from United States Supreme Court precedent"]; see also *Lindelli, supra,* 139 Cal.App.4th at p. 1515 [federal courts' interpretations of federal fee-shifting provisions such as found in *Virani, supra,* 89 F.3d 574, "cannot be the law in California after *Flannery*"].)

However, construing section 12652, subdivision (g)(8), in accordance with *Flannery, supra,* 26 Cal.4th 572 and its progeny, rather than federal law, does not support Berney Law's right to sue ClubCorp for statutory attorney fees waived by Bartlett in

the March 2017 settlement agreement.  As discussed, the case at bar is not a conflict between Bartlett and Berney Law over a statutory fee award.  And, if anything, *Lindelli*, *supra*, 139 Cal.App.4th 1499 and *Ruiz, supra,* 222 Cal.App.4th 596, undermine Berney Law's contention that counsel possesses not simply the right to an award as between counsel and client, but also the right to pursue fees directly against the defendant in a separate action.  As *Lindelli* recognized, the very purpose of counsel's intervention is to permit counsel to protect an interest in a potential fee award that a party might waive.  If counsel could simply proceed against the defendant directly in a separate action for statutory fees, there would be no need for intervention. (Cf. *Lindelli*, at p. 1512 ["Under *Flannery* [citation], the attorney is entitled to fees awarded *unless* an agreement specifies otherwise.  By application of *Flannery*'s reasoning to the term 'successful party' in [Code of Civil Procedure] section 1021.5, RJP's [law firm's] interest in a fee award will be directly and adversely affected if a final judgment issues prior to a motion for fees.  RJP will forever lose the right to collect fees from defendant under section 1021.5.  RJP has a sufficiently direct and immediate interest to permit intervention and a motion for an award of fees under section 1021.5"].)

Berney Law did not seek to intervene in the action to protect its interest in a statutory fee award (see *Lindelli, supra,* 139 Cal.App.4th 1499), nor did it effect a settlement agreement that contemplated a court order of statutory fees (see *Ruiz, supra,* 222 Cal.App.4th 596).  Instead, by Berney Law's own admission, Berney Law and Bartlett agreed Berney Law would obtain a portion of the settlement proceeds as attorney fees.  ClubCorp, for its part, bargained for, and received, a settlement and dismissal

of the action with prejudice relieving it from any further obligation to pay statutory attorney fees.  If the April 2017 attorney fee agreement is declared unenforceable due to Berney Law's own improper actions (as opposed to ClubCorp's), as Bartlett has alleged, it simply does not follow that Berney Law is rewarded with standing to proceed against ClubCorp in a separate action.  Indeed, Berney Law cites no case, and we are not aware of any, that allows counsel to proceed against the settling defendant for statutory fees following dismissal of the action with prejudice when no fees were awarded in the underlying case, no provision was made in the settlement agreement for counsel to obtain a fee award, the parties expressly agreed to bear their own fees, and counsel concedes it made alternative arrangements with its client to obtain fees from the settlement.

Berney Law's contention it was not a party to the settlement agreement between Bartlett and ClubCorp and did not waive its "right to proceed" against ClubCorp for statutory fees thus misapprehends whatever right it may have to request fees in the qui tam action itself.  As discussed, Berney Law may well have had the right to claim entitlement to section 12652, subdivision (g)(8), fees awarded to Bartlett (cf. *Flannery, supra*, 26 Cal.4th 572; *Aerotek, supra,* 54 Cal.App.5th 670), to intervene in the qui tam action to protect its interest in one (see *Lindelli, supra,* 139 Cal.App.4th 1499) or to effect a settlement that contemplated a fee award (see *Ruiz, supra*, 222 Cal.App.4th 596). Having elected instead to rely on a separate agreement, Berney Law, in effect, waived whatever basis it may have otherwise had to pursue a claim for statutory fees in the action directly against ClubCorp.  (Cf. *Lindelli*, at p. 1512.)

Berney Law asserts the finding it lacks standing to proceed directly against ClubCorp for statutory attorney fees will undermine CFCA's purpose and intent to incentivize attorneys to represent parties in qui tam actions. A qui tam plaintiff could, as Bartlett did here, waive his or her right to statutory attorney fees, keep a "windfall" of a settlement that was intended to include attorney fees, and leave counsel out in the cold. However, a prudent attorney will protect against that outcome by entering a fair, noncoercive fee agreement with his or her client. Moreover, as Berney Law well knows because it included such a claim in its complaint against Bartlett, even without an agreement the plaintiff is not entitled to keep the windfall; and counsel is not without a remedy. Counsel may proceed in quantum meruit for reasonable attorney fees (see generally *Flannery, supra,* 26 Cal.4th at p. 588 ["[p]laintiff correctly points out, also, that our construing section 12965 in her favor would not diminish defendants' right to enforce any compensation right in quantum meruit"]), which is all section 12652, subdivision (g)(8), affords in any event.

4. *Berney Law Has Not Alleged an Assignment of Bartlett's Rights To Seek Statutory Attorney Fees*

Berney Law also argues, if we disagree it is entitled to proceed against ClubCorp for statutory fees pursuant to *Flannery, supra,* 26 Cal.4th 572, it has standing to seek fees based on a February 2014 fee agreement in which Bartlett "agreed that the right to collect any statutory attorney's fees, including without limitation those available under Government Code section 12652(g)(8), belonged to Bartlett's attorneys," including Berney Law. Assuming that allegation is true, as we must, all that means is that Bartlett agreed any statutory fees

awarded in the action, as between Berney Law and Bartlett, belonged to Berney Law.  But, as discussed, there was no court-awarded fee.  This allegation does not salvage Berney Law's operative second amended complaint.[10]

## DISPOSITION

The order of dismissal is affirmed.  ClubCorp is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.


ESCALANTE, J.[*]

---

[10]   Berney Law's allegation that ClubCorp had agreed to pay Berney Law its attorney fees directly contradicted Berney Law's allegations in every prior iteration of its cross-complaint against ClubCorp.  The court did not err in rejecting that allegation as a sham amendment.  (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1249 ["plaintiff cannot avoid allegations that are determinative to a cause of action simply by filing an amended complaint which omits the problematic facts or pleads facts inconsistent with those alleged in the original complaint"].)

[*]   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.